We'll proceed with the next appeal. Patricia Lacourse v. Defense Support Services John Joseph Gagliano is here for the appellant. Michael Schofield is here for the appellee. And Mr. Gagliano, are you ready to proceed? I am, Your Honor, and may it please the Court, John Gagliano on behalf of the appellant, Patricia Lacourse. My client, as the Court knows, Patricia Lacourse, is the widow of a civilian, a civilian F-16 fighter pilot who died because the civilian contract maintenance outfit, the appellee PAE, did not comply with the Air Force's reasonably precise specifications for the maintenance of that aircraft. The three issues presented on the appeal, I'll address in this order. First is the grant of summary judgment on the government contractor defense. The second is the application of the Death on the High Seas Act. And the third is the striking of contract and warranty claims, plaintiff's jury demand under the Death on the High Seas Act. On the government contractor defense, Your Honors, summary judgment should not have been granted on a matter of law, as a matter of law, because the defendant did not meet the second prong of this Court's test for that affirmative defense as announced in Hudgins. More specifically, the record testimony shows that the defendant PAE, the appellee here, did not comply with the government's reasonably precise specifications. It did not properly troubleshoot the 16, 16 relevant malfunctions in this aircraft that occurred in the days before the mishap. The defendant did not impound or test-fly the aircraft as the Air Force's instructions require. These specific instructions that I refer to, Your Honors, are in the brief. They are Air Force Instruction 21-101 and Air Force Technical Order 1-1-300. The record citations of the noncompliance This is Judge Anderson asking, what particular paragraphs of the Air Force Instruction? Yes, Your Honor, those are cited in the brief and they are 7.1 of Air Force Instruction 21-101 and 4.1 of the TO. Is that correct? Yes, Your Honor. Also, paragraph 7.5, mandatory impoundments of Air Force Instruction 21-101. That requires impoundments where there are system malfunctions of a chronic nature, where there's any malfunction of the landing gear failing to retract, and where there's uncommanded flight control movements. Now, first of all, on the chronic nature issue, the 16 malfunctions that were recorded by the relevant malfunctions that are listed in the brief, there were other problems with this aircraft that we have not cited, but the 16, and I think that's a significant number, that were cited show a chronic problem where the hydraulic, the landing gear, and the flight control systems, which are all connected, failed in the days before this crash. And under the Air Force Instruction 21-101, those chronic problems require an impoundment and a root cause investigation. In addition, under that same instruction, it's clear when there's any malfunction where the landing gear fails to retract, an impoundment and root cause investigation is required. And there are two of those instances among the 16 malfunctions. Let me counsel this, Judge Anderson, again. Let me tell you my concern about your case. I think you would have a much closer case if you really had made an argument in the district court or on appeal under paragraph 7.5, in particular 7.5.4. But my very close look at your blue brief on appeal and at the district court proceedings, your docket 108 as your brief to the district court on summary judgment and your oral argument there, I do not believe that you have preserved an argument under the mandatory impoundment sections. It is true, your blue brief at page 11 in the facts section refers to, and quote, uncommanded flight control movement, which is relevant to 7.5.4. And at page 15, also in the facts section, you also refer again to that and mention Captain Ewing. But there, you don't talk about the uncommanded flight control movement. You're talking, Captain Ewing, the part you quote, is talking about the chronic failure. It seems to me, and your argument section has nothing at all about 7.5 mandatory requirements. And the same thing was true in the district court and at least is clear that it was not fairly raised. So it seems to me, if you have not fairly raised mandatory impoundments under 7.5, then you're left with 7.1 and 4.1 of the TO, which are discretionary and are not the kind of precise standards that would enable you to establish a nonconformity with precise specifications. You see my problem? Your Honor, I do. And I would address it this way. First of all, even the discretionary nature of the paragraph 7.1 that you cited leads us to a jury question of fact when there is evidence presented to the contrary. Second, I'd also point you to page 17 of the brief, which cites to paragraph 7.5 directly and Captain Ewing's rebuttal. Judge Newsom, can I just stop? I want to hear all of your points. But on part one in response to Judge Anderson's question, how is it that a failure, if that's how we would describe it, to do something that is entirely within the discretion of the contractor, how would that be noncompliance with a reasonably specific specification? Your Honor, the specification calls for a root cause investigation. It calls for a, if not an, so on the issue of an impoundment, that is discretionary. But the specifications themselves require a root cause investigation of problems of this nature, which are ongoing and continuous. And I would point the court to the district court's order on page 7, that's docket 134. The issue here is that the district court accepted that, quote, all of the foregoing problems were addressed and corrected as they presented. Well, that's an inaccurate statement of the fact, and that's what leads us to a question of disputed fact, that the district court has just accepted the police PAE's representation that all of these 16 problems, which kept popping up, were addressed and corrected. They were not addressed and corrected. They were ongoing, continuous, and systematic. And that's what leads us to the jury question under the discretionary, not even under discretionary, the discretionary. Thank you, Madam. The discretionary, the impoundment is discretionary, but the obligation to investigate root cause determination is not discretionary. And I believe that paragraph 7.5 was squarely addressed in the brief and quoted on page 17 through Captain Ewing, Your Honor. But is Judge Anderson right or wrong? I think he's right, but you can tell me if he's wrong that you didn't make an argument, a legal argument about 7.5.4. I believe that we did, Your Honor. I believe that the Air Force instruction is squarely before the district court and was squarely before this court. And we stated clearly that there was noncompliance with that for these mandatory impoundments. And again, I would cite the page 17 of our brief. Page 17 is a fact section. It's not an argument section. And I don't see what you're talking about there. I got it in front of me. Respectfully, sir. So it says, in my expert opinion as a career maintenance officer and commanding officer of tactical jet organizations, this mishap aircraft should have been grounded or impounded as per Air Force Instruction 21-101 Chapter 7. In my blue brief, that's at page 15, and that is precisely what I was referring to a minute ago. I do acknowledge you mentioned it there. I apologize. But when you go on to talk about quoting Captain Ewing, he's talking only about the chronic problems and the need for troubleshooting. He's not talking about the commanded flight control movement. And you never even mention any of that in your argument section. And in neither the district court nor on appeal do you show how the it's never explained how that could be an uncommanded flight control movement. First place, that talks about movement. What happened in that initial time when Bogart thought he did not see a movement, in other words, a non-movement rather than a movement. And furthermore, everybody on ground at that point thought that it was pilot error and they redid the check and it came out successful. So nobody explains, neither Captain Ewing in his testimony or certainly not you in your brief to the district court or on appeal, explain why that initial failure followed immediately by a successful check would constitute a quote uncommanded flight control movement. You see my problem? I just don't think you gave the district court a fair chance to consider that problem. And frankly, you haven't given us a fair chance to do it. Your Honor, I obviously respectfully disagree. I think that the issue was laid out very clearly in the expert reports. I believe that the testimony from Mr. Bogart shows that the flight control was commanded to move the during the pitch override check, the flight controls were commanded to move and did not move as they were commanded. And I believe that is a failure of the flight controls to move as commanded as the TO and excuse me, the Air Force instruction states. I believe it's squarely there. Thank you, Madam. I'd like him to be able to answer my question, Judge Wilson, if that's all right with you. Yes, you may answer the question. Thank you. And I believe the question, Your Honor, is that this issue of mandatory impoundments was not presented squarely to the district court. And again, I would disagree with that because the expert reports were brief and clear and concise on the point. They were cited in the brief opposing summary judgment before the district court and they were considered by the district court. But the district court, again, the issue is that the district court accepted and it's plain in the text of the district court's order. They accepted that the problems, the chronic and the ongoing and the systemic problems with this jet were just corrected by PAE when it's our position. And the evidence shows that they the evidence shows, and I might point out that I think this issue is positive, that, and this was squarely in the brief also, PAE invented its own procedures, went well outside the bounds of the Air Force's instructions to do what it thought was the right thing to correct these problems. Well, what it thought was the right thing is not the issue. It did not follow the specification. And that testimony is uncontroverted. It's on the record and it was squarely presented, Your Honor. I believe that issue alone is just positive. And I thank the court for the extra time. All right. Thank you, Mr. Gagliano. We'll hear from Mr. Schofield. Thank you, judges. May it please the court, Michael Schofield for the appellee, PAE, formerly Defense Support Services. I believe the court has correctly hit the nail on the head with the question that was raised in the argument of appellant. And that is under the only two opportunities they brought forth to the district court to even reasonably argue to defeat summary judgment, Air Force 21-101 and Air Force T01-1-300. It is the absence of evidence from plaintiff's experts and appellant's witnesses that is the death nail for their case in this case. The underlying district court judge did a very thorough job of reviewing all of the evidence. And in fact, the appellee submitted the entire transcripts in order to give the court the opportunity to make sure no stone was unturned to make certain that the summary judgment, if granted, was a solid summary judgment. Two points I will address right off the bat on the government contractor defense. And then I will address the DOSA, even though we do not believe we will need to get to those. The government contractor defense clearly applies. I believe the other side has essentially conceded that fact. And that the only issue in this case is, was there evidence of a failure to meet the reasonably precise standards that also appear to be stipulated to in this case. The only two issues, 7.1 and 7.5, interestingly enough, are from a May 2015 Air Force 21-101, as submitted by my opposition, which is post-crash. So we don't even have before this court which Air Force 21-101 was applicable at the time. But assuming they were similar or even the same, 7.3 says, determine if impound is warranted. So it is a, excuse me, it is a permissive. It is not a mandatory impoundment. And that impoundment is to be made, looking up above under 7.2, by the MXG, that is the maintenance group commanders, CCs or equivalent. We don't have... Does the guideline say, this is Judge Wilson, does the guideline use that word permissive? No, Your Honor. The guideline just says under 7.3.1.2, determine if impoundment is warranted when? Clearly if, being a term of permission, or I would say it is up to the person who is charged with determining if impoundment is warranted. And even then, even if it was mandatory under 7.3, it says when an aircraft landing gear fails to extend or retract due to an unknown condition. So if in fact the condition is the squat switch is bad, it's not an unknown condition. They want to make sure if you can't find out why the landing gear fails to extend or retract, you impound it until you do. 7.5, which was where the primary thrust a moment ago was being argued, also has an interesting word that the court picked upon correctly. 7.5.4 says, following an uncommanded flight control movement. It does not say following any flight control movement that is questionable or following a movement that does not occur. It says following an uncommanded. Simple example. Are we just interpreting AFI 21-101 to authorize impoundment as discretionary and not required? Is there anything else in the record that would support that determination? Your Honor, that is a... Captain Ludwig didn't address it. Gary Kibbe didn't address it. Captain Ewing didn't address it. And I'm not aware that any of the PAE's experts addressed that precise issue either. That is correct, Your Honor. It is not precisely addressed. It would be a key component and a necessary burden of proof for the plaintiff on their case. And once we submitted the appropriate motion for summary that was supported by affidavit and testimony that we had followed all precise specifications, which would include this one, and the affidavit of David Olson goes directly to that, the burden then shifts to the opposing party to put forward either a witness or its expert. In a case like this, I would submit it should be an expert who says, I'm familiar with Air Force 21-101, the applicable version at the time. I've read it. And even though it says if, it really means this, in my expert opinion, having maintained F-16s, et cetera. And what the district court correctly noted, and what we believe this court will correctly note, is that there is no such evidence. There is no testimony that then refutes the affidavit and the submissions by PAE that shows we met all applicable, reasonably precise standards. Can I ask you a quick question? So I hear your point about 21-101-71 at SEC being discretionary. Your adversary in the opening said that there was something in the specs that requires what he called a root cause investigation. Tell me about that. Is that mandatory? What is a root cause investigation? Was it done? Your Honor, I have perused these contracts, as have my clients, and we can find nothing that uses that term or a similar term in the Air Force. That was testimony of a colloquial phrase, if you will, from the experts, from plaintiffs, that what they would have done. And the district court judge, Judge Vincent, correctly relayed some of that in his well-written order and said the hypotheticals of what the Navy experts would have done, what they would have done differently, do not point us to a clearly defined and explained, here's the specification that was breached, here's how it was breached, and why PAE should not be entitled to the government contract or defense. Got it. All right. So I guess what I'm just going to say in fairness to your adversary is that I will ask on rebuttal for a citation to a specific Air Force requirement mandating a root cause investigation for these sorts of issues. So just be ready to provide it to me. Not testimony, but an Air Force specification. Sorry. Go ahead. Thank you, Your Honor. Your Honor, also, if there was an investigation that I have somehow overlooked, or I'm sorry, a section that says that in the thousands of pages that were submitted, there would still need to be testimony by someone that the section was applicable, and that it applied to this aircraft at this time, and that therefore, PAE deviated from that section. It is similar to, and I will shift for a second to the argument you just heard, that PAE went outside of these. That is based upon testimony, again, from plaintiff's experts, and from PAE witnesses that following their maintenance, they did what they called a confidence run. Simply starting the engines, putting the aircraft through on the ground, pressurizing the system, testing the systems, similar to if your mechanic changed a part in your car, and that was all that was required under the specifications, but he decided to go ahead and start the car to make sure it ran. There is nothing in the Air Force specifications that says you cannot do a run, an engine run, a confidence run, as our people called it. Turning to T01-1-300, which I know there was not much time spent on on the initial, but I want to address that. 4.1, check flights, which was cited, says in the second sentence, such flights are conducted when it is not feasible to determine safe or required operation by means of ground or shock test. So again, it is not that a check flight is mandatory after this particular maintenance on this aircraft, for example, changing a hydraulic accumulator, or changing a broken clamp, or even changing a switch that allowed the gear to go up or go down. You specifically need to look at the rules and regulations and say, can we safely on the ground test this? Well, let me ask you, this is Judge Wilson now, and let's, AFI 21-101, section 7.5, doesn't it call for mandatory impoundment following an uncommanded flight movement? 7.5, your honor, says an uncommanded flight control movement. So if I go to put the gear up, and it doesn't go up, that's an uncommanded non, or that's a commanded non-movement. By definition, that's not an uncommanded flight control. If I'm flying the aircraft, and the gear suddenly goes down on its own, without any input from me, especially on the F-16, being that it's what's called the electric jet, that would fall in the definition. So once again, you would need some testimony from someone explaining and defining on the part of the appellant how that fits within that regulation, and we go back to the initial comments by this court that it is in fact the missing information that was the problem for the underlying plaintiff appellant in this case. This is Judge Anderson. My law clerk's search of this record reveals the closest thing that comes to what the plaintiff might have argued in this case. It's in Captain Ewing's rebuttal report, docket 108-20 at 12, and he does say, in my expert opinion, the mishap aircraft should have been grounded or impounded, and he cites 121-101, chapter 7, paragraph 7.5, mandatory impoundments. And then he paraphrases 7.5.1, which says, in part, impoundment authority, it should be determined that extraordinary measures are required, and that, of course, doesn't place a requirement. But then he does paraphrase 7.5.4, following an uncommanded flight control movement during the final check of the MPO, manual pitch override system, by the pilot and ground crew, IAW procedures in certain pages. So he does raise the issue. Suppose we deem that this is not waived, like I suggested in my questions to him, suppose we actually address that. Number one, is this evidence from Captain Ewing enough? Number two, is there any other evidence, either way, in your favor or the plaintiff's favor, on this, whether or not this manual pitch override check, which initially, quote, failed, and then was successful immediately thereafter, would constitute such an uncommanded flight control movement that would be a mandatory impoundment? Thank you, Judge. I will address that, and I'll try to be brief and to the point. That particular witness also goes on in his deposition, and I do not have the page exactly in front of me, to explain that he is not that familiar with the Air Force requirements, and by his own description, he has not described an uncommanded movement to fit within the definition. So at best, it is, I believe the underlying judge called it hypothetical, or he used another word that was an excellent word in describing these possibilities. And so the court is not required to go to those extremes in order to deny a summary judgment. I'll use my last moment or two to address the Death on the High Seas Act. There's no other evidence, one way or the other, in the record about this particular issue we're talking about? There is the evidence in the record, Your Honor, where it did in fact pass the MPO, because the description was the pilot must push the stick firmly and hold it as he pushes the other switch, and the ground ops persons... Any expert opinions with respect to that? There are no other expert opinions with respect to that, Your Honor. There are none submitted by the appellant in support of their position. Clearly in this case, addressing the last arguments, the crash occurred 60 miles offshore. Following Talentire and the line of cases after that, you have a clear application of the Death on the High Seas Act. Once you find... This is Judge Newsom. Just a very quick question, just really to satisfy my own curiosity. I mean, as I read the act, when the death of an individual is caused by a wrongful act, neglect, or default occurring on the high seas, I mean, did the act, neglect, or default here occur on the high seas? Your Honor, the culmination of the act, the cases have held after the death on the high seas was actually written, that in order to promote the efficiency and the economy and the uniformity of the intent, that in fact we have after Talentire, the Korean Airlines disaster, we have Zickerman, et cetera. We cited all of these, including the Florida case. I take your point, and I'm not doing this just to mess with you. You have scores of cases that construe the act this way, but it seems to me like the act has just been rewritten to say that when the death occurs on the high seas, the act applies, rather than when the negligence occurs on the high seas. Your Honor, what has happened is that cases have simply taken that language and explained what was intended, and they say, well, the culmination of the events takes place that results in the death on the high seas. Otherwise, you get into the situation where you have a negligent act that occurs in the making of a part in Texas that's put on in Atlanta by the mechanic, and then a failure of the pilot to recognize the warning light 30 miles offshore. Do you have passengers bringing cases in four different states as well as under DOSHA? Every case since then has gone down the same path, and we believe this court should likewise follow as this court has done before in a case and rule that, in fact, it is the locality of where the culmination of the events come together that creates the situation where the death on the high seas act occurs. Now, once it applies, we also know there that this was a noncommercial aviation activity. There were no passengers, no cargo being carried, even though there was a civilian DOD pilot on board. Therefore, he's limited in his damages, and because it's under maritime, there is no right to a jury. Thank you, Your Honors, for listening, and thank you for your time. Thank you, Mr. Schofield. Mr. Gangliano, you've reserved some time for rebuttal. This is Judge Newsom, just at the risk of intruding on the beginning of your rebuttal. Could you go ahead and give me the citation to the Air Force regulation that requires the root cause investigation? Yes, Your Honor. The root cause determination is my language. I'm looking at specifically Air Force Instruction 21-101, paragraph 7.1. I'm sorry, the last sentence of that paragraph, quote, impounding aircraft and equipment enables investigative efforts to systematically proceed with minimal risk relative to intentional, unintentional actions and subsequent loss of evidence. Now, the investigative evidence to systematically proceed is the root cause determination, so that is the spot in Air Force Instruction 21-101 where I, I guess, paraphrased that. I believe the experts, and I believe I got that paraphrasing from our experts. There's a lot to unpack here, so I'm going to try and move quickly through this. The other evidence in response to, I believe it was Judge Anderson's questions, would be Captain Ludwig, who is the only expert in the case with any F-16 pilot time. In his report, he opined and said that there should not have been a second check of the pitch override. And I guess the question is, are we defining what an uncommanded flight control movement is? The answer would be the Air Force doesn't define that in the specification, and therefore, we look to plaintiff's experts, and plaintiff's experts have opined definitively that the pitch override check, whether you call it a lack of a movement or an uncommanded movement, the explanation of that regulation by plaintiff's experts is that that check was an uncommanded flight control movement requiring mandatory impoundment. Do you think Captain Ludwig opined in that regard? Do you have the citation, or tell me where, in his report, in his testimony, where? Yes, sir. Both, I believe, in his report, document 108-15 at page 2, and also in his he discussed the pitch override check in both of those places. I'd like to just move on and address one issue that I didn't touch upon in my initial argument that I believe is relevant. Setting the Hudgins factors aside for the government contractor defense, I believe that the actual government contract in this case precludes the government contractor defense for three reasons. This was a contract that was in Boyle and after Hudgins, and the contract unambiguously made PAE liable for its own professional negligence, number one. But isn't, this is Judge Newsom, isn't that really just vis-a-vis the Air Force, not vis-a-vis anybody else? Isn't that pretty obviously what the contract is up to? No, Your Honor, and here's why. Because the government will exercise no supervision. Well, even if that's the case, Your Honor, I would say that Mr. LaCourse was a third-party beneficiary, and I don't think that that can be fairly argued that he was a third-party beneficiary. But regardless, the government is to exercise no supervision or quality assurance. And in fact, that's written in the contract, number one. And number two, the deposition testimony bears that out, that multiple mechanics testified that the government quality assurance inspectors were not even allowed in the same vicinity of the aircraft while there was being work performed on it by the appellee. And number three, the government required PAE to obtain and maintain liability insurance, and they did and they do, and that insurance has provided defense and is paying for counsel's appearance here today. So I believe that the contract itself under the terms required the insurance and made PAE liable for its actions with no government oversight. I'm looking over my notes here on what else I wanted to address. Can you just address briefly my fixation, I suppose, on the plain language of the death on the High Seas Act? I mean, frankly, I'm just going to be real candid. I think you're dead right about the language. Unfortunately, there is a lot of precedent, including Supreme Court precedent to overcome. What do you have to say to the cases? Well, I believe I'm right also, Your Honor, based on the legislative history and the plain language. Section 3302 says that the personal representative of the decedent may bring a civil action in admiralty. And so the jurisdiction is not conferred by DOSA. In fact, state jurisdiction is concurrent under a later section of the Act, 30308A. And under black letter Supreme Court law, and actually I found this last night as I was preparing, I'll give you this site. It's Kaplan v. Levitt, 493 U.S., 455 at 461 with multiple Supreme Court citations. It says that federal court jurisdiction is concurrent with state court where language like this, using the word may, is permissive for jurisdiction. In that case, Kaplan v. Levitt was a RICO case cited some other cases, including cases under OC, under the Offshore Continental Shelf Liabilities Act, which is, I guess, a sister statute to DOSA. So I believe that the Supreme Court precedent and the black letter interpretation of it. Thank you, Madam. I believe that Your Honor is right and our view is correct, given the legislative history and the plain language of the statute and Supreme Court precedent. Thank you, Mr. Gagliano and Mr. Schofield.